Ms. Ross, the Honorable Judges of the United States Court of Appeals for the Third Circuit. Oye, oye, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and pay their attention to this court's announced session. I say to the United States and its Honorable Court, please be seated. Good morning. The first case we'll hear this morning is United States v. Claxton. Okay, Cassidy, you can proceed. Good morning, Your Honors. My name is Demetra Lambros. I'm here for the United States. May it please the Court, I'd like to reserve two minutes of time, please. That's granted. The jury in this case was explicitly... Can you hold off for one second? Just having a slight audio issue. No problem. Okay, you can proceed, Counsel. The jury in this case was explicitly instructed that in order to find Claxton guilty of this conspiracy, he had to know that its object was the distribution of drugs. And they got a specific jury form that also required them, again, to decide whether or not Claxton knew that he was conspiring to distribute a controlled substance. And they made that finding. They checked the box guilty. And that finding is entitled to deference. And it must be upheld if, viewing the evidence in the light most favorable to the government, any rational jury could have found that conduct beyond reasonable doubt. Okay, but there has to be evidence. And let me ask you this. How do you reconcile this case with the fact that inherent to the defendant's role in the case in which the Court found knowledge was direct access or control over the contraband? That's not our kind of case. We don't have a control over the contraband case. And it has to be that a drug conspirator also who is involved with helping get hundreds of thousands of dollars in drug proceeds is just as guilty. It was never Claxton's role to be in charge of the drugs. Well, how would he know it's a drug conspiracy if there's no drugs involved? There are a few things that would very much indicate that he knew that there were drugs involved. First of all, he was not just a mule. This is a man who is charged repeatedly of getting hundreds of thousands of dollars from one conspirator, the main guy in North Carolina, to the main guy here in the Virgin Islands. Hundreds of thousands of dollars on each event. Sure, but the question isn't did he know he was doing something illegal, but did he know the illegal thing he was doing was being involved with the drugs? That's right. He has to know that he was involved in drugs. And there are a few things that also indicate that, because top guys in a drug conspiracy, it would be reasonable to infer. The jury can use its common sense and see that the top guys in a drug conspiracy are not going to time and again put that kind of money in the hands of someone who's not part of their circle. He didn't do this just once or twice. Maybe you could be an unwitting pawn. We're talking about $190,000 on each trip. But I think as Judge Jordan pointed out, clearly something smelled here. But we need to look at the evidence that I guess can show us that he has some knowledge that has to do with drugs in particular. That's right. As opposed to some other contraband. That's right. And there are a few more things. Again, the jury can draw reasonable inferences, and one of the inferences is that you wouldn't put a million dollars in the hands of a guy time and again, well, $190,000, if you don't have him as part of your inner circle. Also, we have, he has a direct and close relationship with one of the managers of this conspiracy. We have this fellow, Isaac Glenson, who is the top guy in North Carolina. Now, is he your best evidence in this case? He is an important piece of the evidence. Yes, he may be our best evidence. We have the inferences that you can draw from the couriers. I want you to speak, if you would, to a distinction that I think your opposing counsel argues about Berea, which is in Berea, the statements that are made by a co-conspirator are made in the course of the conspiracy, not in a courtroom afterwards where somebody's got an incentive to be selling somebody out for their own benefit. That's a big distinction here. Now I'm interpolating and adding them, but I take that to be the gist of the argument. Why should we not be persuaded by that distinction? I don't believe that is a distinction. What happened in Berea is the co-conspirator is on the stand, and he is testifying that his role, Berea's role, is to unload these drugs. It's not a statement that is made in the course of the conspiracy. He's on the stand testifying. And this Court credited that. It said that when a co-conspirator testifies about a role that the defendant is playing, we can impute knowledge to the defendant that it's fair for a jury to infer that the defendant also knows what his role is, if the co-conspirator is describing his role. What was the statement in Berea? The co-conspirator is on the stand, and the government is asking questions of him, and he said, what is Berea's role? Berea's role was to unload the drugs. Right, but wasn't that a statement about something that was said at the time? In other words, I thought the facts of Berea were that the co-conspirator was told, look, truck's going to show up, you turn the thing over, and his job is to unload the truck, and that that was stuff that was said at the time. Now he was testifying to it, of course, in the courtroom, but it was testimony about things that were said back then, and that in this case, it's not a testimony about things that were said back then. It's Isaac saying he was part of the organization. Is that a – have I got a misunderstanding about what's being said here? I don't believe that is the distinction. I don't believe that this Court relied on the fact that the idea was that he was testifying, that that was something that was said at the time. In fact, Judge Fischer very specifically noted that there was no testimony from the – I'm not asking whether we've distinguished on that basis before. I'm asking whether that makes a difference. I don't think it makes a difference because I also don't think that's what happened in Berea. I don't think that there was testimony at the time there was conversations about that being his role. I think he's on the stand, and I think it's the same that we have here. We have a co-conspirator who's on the stand who's saying, I am a manager of this organization. And a lot of witnesses were talking about this drug operation as an organization with lieutenants and managers and different levels of people in it. And we have Isaac on the stand, and he is saying, I am a manager of this organization. Claxton was a member of this organization. It was his job to retrieve the couriers, get them to mark the other head of the organization here. And he also helped me distribute hundreds and hundreds of kilos of cocaine. All right. In this case, there's no discussion among the parties about drugs. Drugs don't come up. Suppose this was a conspiracy of receiving stolen goods. I mean, and he's transporting people back and forth to the airport. In other words, obviously, the jury concluded that anyone looking at this has got to say it spells. But you've got to be able to put your finger on what the conspiracy's object was. That's right. Drugs. There's nothing here. This conspiracy could have been one for, as I said, receiving stolen goods or some other crime. You've got to nail it down to what he was convicted of. And where in the record is there knowledge that he knew these people were, he was part of a drug conspiracy transporting people that were transporting drugs? Again, if I may, first of all, the fact that the jury could conceivably have inferred, we're also talking about stolen goods or counterfeit, doesn't mean that they couldn't also have inferred that it was drugs. They could only infer if there's something in the evidence from which they could have made the inference. What in the evidence would allow them to say this spells and what they're doing is drugs? It's the fact that he was playing an important role time and time again, moving hundreds of thousands of dollars from one main guy in a drug operation to another. Who's going to get sent to court? He's doing it for a stolen goods conspiracy. It's fair for the jury to infer when he does it over and over again that the head of these organizations are entrusting the guy that he is in their circle, that he knows what's happening. What shows the object of conspiracy is drugs and not receiving stolen goods? He had, again, a relationship with the head of the drug organization. This was a drug organization. Clearly, the co-conspirator is saying he's a member of my drug organization. He's a member of my organization. He's on my team. He didn't make the chart, did he? Pardon me? He didn't make the chart, right? He didn't make the chart. He didn't make the chart. But the chart, you know, who knows how you can – that chart left out a lot of people and left out a lot of guys in the middle in the chart. And also, again, that was something for the jury to decide. He's on the stand saying he's a member of my organization. The jury can decide whether he left him off the chart. That was for the jury to resolve. The jury found he was involved with drugs. We also have on the farm, there's a conversation. He's a member of the organization. The organization, Isaac says, he comes there ten times. They talk about drug activism. But your organization is a drug organization, though, not an organization for some other crime. Oh, you have to look at the evidence as a whole. Constantly they were talking about this being a drug organization. This was a major operation. In front of him? Pardon me? In front of him? In front of Claxton, no. There's no direct evidence. Not in front of the defendant? No. Now, look, are you acquainted – I don't know if I'm pronouncing it right – the Rios case, R-E-Y, it's inside of your brief. It was a brilliant opinion. It was. Well, I – It was a brilliant opinion. There's a dissenting opinion from me and I. Oh. It was a brilliant opinion. But consistent with that opinion, and I do believe it, is the law. Whether it should be the law or not, that is the Third Circuit law. Is there any evidence that the defendant, his role here in some way, gave him any access to the contraband or the object of a conspiracy? In other words, that he knew that anyone could look at this, as I look at it, and say this guy is up to no good. But what no good is he up to? He's stealing stolen goods, prostitution, pornography, drugs. You've got to pinpoint, according to that case, what he's up to. And if there's no evidence in the record, the jury said the jury convicted him because they smelled a rat but they never found the rat. In that case, I don't believe that case stands for the proposition that he actually has to touch the drugs. That can't be true. Well, Rao says he has to have some knowledge of it. Well, you have to have some knowledge of the drugs. The jury has to be able to infer that he knew he was involved in drugs and not stolen goods or something else, and a gun. We think that there's evidence in this record. We have the co-conspirator who's saying he's on my team. He's helping me distribute kilos and kilos of cocaine. BORIA, I believe, stands for the proposition where you have the co-conspirator testifying like that, that you can impute his knowledge to the defendant. We're at the farm. He's having a conversation. They're conversations at the farm. Members of the organization are there. Claxton's there. It's reasonable to infer. This Court has never required direct evidence. There's no requirement that you have to have direct evidence that he knew he was involved in drugs. You can make some inferences. So it's really, I mean, is it inference upon inference to get there? You can build a case brick by brick, circumstantial evidence. Also, we have evidence that he, again, I don't think you can underestimate that he is a close relationship with an ongoing member of this conspiracy, one of the leaders. It's reasonable for the jury to infer. He goes to Atlantic City. He's helping him retire a drug debt for another person in this conspiracy. Again. But, again, that's not the evidence that he was retiring a debt. It wasn't necessarily a drug debt, at least according to this op-ed. No. In fact, well, what the conspirator testified is we're going to Atlantic City. I got in trouble with nine keys. He's talking about it as nine kilograms of cocaine. Again, he knows. He's talking. They're there. He's brought him in his inner circle. He's saying he's on my team. They're in Atlantic City trying to retire a drug debt to another member of the conspiracy. The closeness of the relationship, yet another way that you can infer knowledge that he's not being kept in the dark. We have to get where you want to go, though. We do have to say that the words member of my organization means knowing member, that he was brought in, that he knew something, right? Yes. You have to assume that he was on the farm means he was there when drugs were being discussed. That's something that has to be inferred because there's no direct evidence for that, right? Correct. And you don't require direct evidence. We can make fair inferences. And likewise with the testimony concerning the couriers, there's no evidence that he was ever told what they were carrying, why they were carrying it. The inference is that, well, he did it a lot, so he must have known. That's it, right? Well, first of all, because he had dominion and control over some of those bags, it's a fair inference, an inference, that he knew that there was $190,000. But as you say, the key point is, does he know that's about stolen drugs or not? And, again, you can fairly infer when the head of a guy is being – when a trusted member of an organization is time and again playing an important role that he knows what he's a part of. Thank you. Thank you, counsel. Good morning. My name is Susan Brook-Moorhead, and I represent the appellee, Craig Claxton. I think that the issue that the court will need to decide today is really how much evidence does it take to be substantial enough to support the jury's verdict in this matter. And it's with a specific perspective on the evidence, right? We have to view this in the light that's most favorable to the government because they won the verdict, right? That's correct. Okay, so if we draw every reasonable inference in their favor and look at it in the light most favorable to them, what is wrong with the government's assertion that nobody gives somebody control over hundreds and hundreds and hundreds of thousands of dollars over and over and over again unless that person has more than just a vague notion that they're doing something wrong? They know they're involved in running money for the drugs. What's wrong with that as an inference, particularly from that perspective? Because it is requiring an inference on an inference to make that leap. There is no link whatsoever with that money being drug-related money and Mr. Claxton knowing that and participating knowingly in that aspect of a conspiracy. I think their assertion is, and this is what I'm trying to get you to speak to, their assertion is there is a link. This isn't a one-off. This is many, many, many, many times over. And if somebody's doing something many, many, many times over, it is fair to assume, it's not an inference on an inference, it's fair to assume that they are enough on the inside to know it's drugs because you don't give somebody access and control over that kind of money on a repeated basis without them being far enough inside the door that they at least know this is about drugs. That's the argument I understand them to be making. And why is that something that, particularly from the perspective of every favorable view to the government you give them, is an adequate basis on which to uphold the verdict? The fact that he was given money, and let's assume that all of these suitcases had $190,000 in money and that he repeatedly picked up women who were obviously trusted to carry this money, doesn't explain that this money was the result of selling five kilograms or more of cocaine, importing it from outside the U.S. Virgin Islands and sending it to the states and returning this as the proceeds of a drug sale. There isn't any link to the drug part of it unless we look to some other circumstances that are in the evidence. The circumstances that they're pointing us to, and you heard it said over and over again by Ms. Lambrose, the circumstances they're pointing to is the multiple occasions. That is, they say those other cases where you said it's not enough to just be there when the bad stuff is happening, those aren't cases where somebody is a multiple repeat player. The very fact that they're a multiple repeat player raises an inference that they are enough in the know that you can say they knew it was drugs because they may not be in the inner inner circle, but they're close enough to the inner circle to know. So I guess that's the question I'm trying to ask, perhaps inartfully. What's wrong with the argument that being a multiple repeat player in itself raises an inference of knowledge? I just don't see it imputing the specific type of knowledge that's required to knowingly agree to be part of the conspiracy, whether he did it five times or ten times or twenty times. He is doing the same act of going to the airport, retrieving women, taking them to their hotels, sometimes taking their bag to somebody, sometimes not. How about if you add the testimony of Isaac to this that specifically says he's part of the organization, he's out on the farm where we talk about drug dealing, he goes to Atlantic City with me to help retire a debt associated with drug running. Can I tackle them one at a time? The business about the farm, I mean the testimony is very, very limited from Isaac in terms of the farm. He says we go there to fight dogs and talk drug activities. He says legitimate pharmaceutical trade, when he says drug activities he means illegal drug trade, right? I don't know what he means. He says talk drug activities. Every other co-defendant in this case, there was a specific link to knowledge of drugs, whether they were mules, couriers, boat captain bringing a shipment in from Tortola. In each instance there was something connecting the person with drugs and knowledge of drugs. So there's nothing. Isaac says Claxton is on the farm over and over again and the farm is where we go to fight dogs and talk about drug activities. So he's putting Claxton in a place where they're discussing drug activity. Is that not enough for a jury to draw a fair inference? I think that's keeping bad company and it falls under those kind of cases. Well, your best argument is that they never spoke of drugs in front of him. There's no evidence of that. But the point is, you're acquainted with U.S. v. Borea. It's in your brief, right? I don't see an awful lot of difference between your client's situation and Borea, who we convicted. Borea transported the stuff, arranged for it to be unloaded. And he himself never put his hands on the stuff, but he was the contact person that arranged for the whole shooting match to go forward. The transportation, the arrangement for the unloading, but he himself did not want to be convicted of it. I don't see what's the difference between your man and Borea. Well, in that instance, it wasn't twice removed. In Borea, there were drugs in the tractor-trailer. And the co-conspirator, I don't think he was the cooperating informant, testified that he was told by Morel that Borea's role was specifically to take the tractor-trailer, from Alvarado, and unload the drugs. And I think that that's an important distinction, because it was a very specific role that he had. But with Claxton and Isaac, Isaac's testimony was that he was to retrieve the girls from the airport and take them to the hotel, pay them, and take the bag to Mark. Well, it's more than that, isn't it? He says that Claxton is part of the organization. I mean, isn't that saying in just different words, he's part of the conspiracy? He's in on the deal. He's in the conspiracy. It's a direct statement that Claxton is involved and part of the whole drug-dealing conspiracy. Yes, he's saying it. You know, he pointed him out in the courtroom. Isn't that then for the jury to decide whether they believe Mr. Isaac or not? I don't think that he said specifically, though, that his role is retrieving the women who are carrying drug proceeds that I informed him about or that he knows about, and that he's taking that money to Mark. He doesn't even, in his testimony about Claxton, you know, he describes how he himself puts his money in the bags, et cetera, in the states and sends it with the women. But there's no testimony from him that in any way imparts that knowledge to Claxton. You're painting your client as a little bit like an altar boy here. And then there's no one that's going to look at this case and say this guy is not – look, you've got the following facts facing you, and you can't deny these, I don't think. Number one, he had an ongoing role. This was not – time and time again, he repeated this conduct of arranging for the herders to be transported and paid. His presence on the farm with people at a gathering, there's nothing saying he was talking about drugs to him or about him. But they're all talking about drugs at the farm. He's constantly on the farm. His presence during a conversation with his co-conspirator and a courier. And last of all, his direct access and responsibility for the proceeds of the drug conspiracy. So, as I say, we're not dealing with some YMCA boy who's shooting baskets on his spare time. He's involved in it, and why can't a jury briefly say this is a drug cartel conspiracy? You've got those four points I mentioned. Okay. I agree that, and as Judge Gomez found, his actions were suspicious and looked to be probably illicit of some sort. The fact that he was picking these women up and taking their bag one place and taking them another place. Yes, during a six-month period, he made, I think, one trip a month, more or less, to the airport to pick them up. I'm sorry, I didn't hear that part. The proceeds. Well, in those six trips, one time somebody else, the first time somebody else was in the car, and they left with the car, and he was having lunch. I mean, if we took it trip by trip, I don't know whether you want me to address the actual evidence that was in, or just Mr. Isaac's global reference that this was what Claxton did, but when the women testified, in many instances, it was really not what he did. And he was described by Isaac as sort of a backup person. He would call Claxton if he couldn't reach somebody else to pick up the women. And did the jury fairly say that he had responsibility for the proceeds? Some responsibility for the proceeds. I mean, I guess from the viewpoint that he picked up women who had brought money and he transported them. Sometimes he took the bags from them. I mean, he took the bag full of cash and took it away from them and then went somewhere with it. That implies, at least according to the government, a high enough degree of trust in him that it's not something you would give someone to do on a repeated basis without them having some knowledge of the conspiracy, including the object of it. I think there was one instance where he took the bag from Ms. Cox, or he kept the bag and it got returned later. But in the other instances, the bag was either given to somebody by the side of the road or by a pet shop, or taken by somebody else. I can't, you know, deny what the facts were that were brought out and what the evidence was that was brought out. I can point simply to what I would call the absence of evidence in terms of him being, I mean, he wasn't compensated. There's no evidence of that. He was compensating other people. He was handing out $1,000 to these couriers on their trips, right? He was paying. There was one person. Now, Mr. Isaac said he paid them, that Claxton paid them each time. But in fact, when each of the women took the stand, it was Isaac who had paid them each time, with the exception of one person, Alexis Wright. Now you're asking us to weigh the evidence, right, to decide, but there's testimony in the record that he paid them $1,000 when they got there. Here's the bottom line. And I guess I'd press you to answer the question that Judge Cowen is putting to you. You've got certain facts that are in the record about him being sent again and again to play a role in getting the cash through. He's got a role and he plays it repeatedly. He's at the farm and at the feed shop, places where there's testimony that the drug activity is openly discussed. He accompanies Isaac on a trip where he is told, this is to help me retire a drug debt, the nine keys that I owe to another person who happens to be another person in the conspiracy. There are these things going on, including Isaac's statement flat out, Claxton, he's part of the organization. You put those things together, and can it really be said that there's no rational juror that would look at those things and say, hmm, yeah, he knew it was drugs. He knew it was a drug conspiracy. Because that's the question in the end, right? You'd have to say, to agree with what the district court did here, you'd have to say it's utterly irrational for a human being looking at that to say, yeah, he knew it was drugs. Isn't that our standard? I think given the line of cases from this circuit, I do think that there's a paucity of evidence, as Judge Gomez said. And I just would like to address, I see the red light flashing, the part about the gambling. Because the testimony was almost unintelligible, but if it meant what the government claimed it meant, it was related to a time period after the conspiracy had ended. Is that material? If they go to Atlantic City a month after the conspiracy supposedly ends, but Isaac says something which a person couldn't understand to mean, I'm retiring, I'm working off a debt here of nine keys, that a reasonable juror could say, that has reference to things in the past, during the time frame of the conspiracy. No, but the testimony that related to nine keys was after the conspiracy was over as well, and was about a month after the conspiracy. I think it was clear error to have it in his evidence, but what Judge Gomez had said in one of our many times of coming for sentencing, was that he didn't really care if his mother went with him. It was gambling, it was a totally different thing, and it wasn't anything that anybody was charged with. Thank you. Just very quickly, the evidence about the gambling and to retire the drug debt was admitted in evidence, even if it was improperly admitted. I think you're right, Judge Jordan, it was properly admitted, but even if it was improperly admitted, Lockhart v. Nelson says you all still consider it. Also, again, we need to look at the evidence as a whole, and the evidence as a whole shows that when Isaac is saying he's a member of our organization, that means something here. It's clear we're talking about a drug trafficking organization. If it were clear, we wouldn't be having this argument, right? But does that mean that his organization is in itself a vague statement? What does that mean? Does that mean he's a knowing participant? It doesn't tell us what he was told, does it? It doesn't tell us what he was told, yes. But, again, brick by brick. It's very clear from the trial that we were talking about the organization as a drug trafficking organization. I'm simply saying that the inference when Isaac is saying he's a member of our organization, he helped me distribute hundreds and hundreds of kilos of cocaine, he did this repeatedly, he was the bridge between the two main guys of this organization, responsible for hundreds of thousands of dollars. It is a reasonable inference that a trusted member of an organization who plays his role in that organization again and again, and it's an important role, knows the nature of the organization that he's a member of. Thank you.